# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-2533
_____

Felecia Channell

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner, Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: April 18, 2014
Filed: June 25, 2014
[Published]

_____

Before LOKEN and MURPHY, Circuit Judges, and SIPPEL, District Judge.[1]

_____

PER CURIAM

_____

[1]The Honorable Rodney Sippel, United States District Judge for the Eastern District of Missouri, sitting by designation.

Felecia Channell appeals the district court's order affirming the denial of her application for supplemental security income benefits (SSI). Channel alleged disability since January 2010 based on a mental impairment. After a June 2011 hearing, an Administrative Law Judge (ALJ) denied Channell's application for SSI benefits. The Appeals Council declined to review the ALJ's decision, and the district court affirmed. Upon de novo review, see McDade v. Astrue, 720 F.3d 994, 997-998 (8th Cir. 2013) we reverse and remand.

Channell was born in 1986 and was 24 years old at the time of the ALJ's decision. She completed the eleventh grade getting all As. However she was taking special education classes in all substantive education courses, including English, math, biology, and history. Channell has never held a job. She can read "little" words and write but cannot be sure she gets the correct change when she buys something at a store. She lives in a house with her four children ages 5, 4, 2, and 1. She receives food stamps and relies on financial support from her family. With regular assistance from her family, Channell is able to care for her children and does her own housework. When school is in session her kids are placed in daycare. If Channell goes shopping she is able to determine what groceries she needs and buys them herself. She got her driver's license (after four attempts at the written test) when she was 23 years old but does not own a car and does not drive often.

Channell has no physical impairments. Her disability claim is based on her mental limitations. In 1999, when Channell was 13 years old, she was given an IQ test, (Wechsler Intelligence Scale for Children - III) which revealed a verbal IQ score of 58, a performance IQ score of 63, and a full scale IQ score of 56. In January 2006, when Channell was 19 or 20 years old, she was given a psychological evaluation by a psychologist, Dr. George DeRoeck. Dr. DeRoeck noted that Channell "was very slow to respond, gave vague responses, exhibited a flat effect and, in general, appeared sluggish." He observed that her speech was clear and effective, though

"somewhat impoverished," and that she demonstrated an ability to follow simple instructions adequately.

Dr. DeRoeck administered an IQ test (Wechsler Adult Intelligence Scale - III) which revealed a verbal IQ score of 67, a performance IQ score of 59, and a full scale IQ score of 61. Dr. DeRoeck noted that these scores were commensurate with the mildly deficient range. He also opined that, although Channell did not exhibit signs of exaggeration or malingering, she "exhibited relatively poor motivation and confidence in her ability, therefore putting forth little effort in the items at hand" and that she had a "tendency to give up very easily and would easily state 'don't know.'" Dr. DeRoeck stated that these "motivational factors should be kept in mind in reviewing her test results." Dr. DeRoeck concluded that Channell's "overall intellectual functioning is commensurate with the mildly deficient range."

On February 2, 2010, Dr. Winston Brown, M.D., a state agency medical consultant, completed a mental residual functional capacity assessment based on his review of Channell's medical records. Dr. Brown opined that Channell would be able to perform work where interpersonal contact would be incidental to work performed; complexity of tasks would be learned and performed by rote; few variables and little judgment would exist; and supervision required would be simple, direct, and concrete.

On January 19, 2010 Channell filed an application for SSI. The Agency denied Channell's claim. A hearing before an ALJ was held on June 15, 2011. Channell tesified about her mental capacity issues and about her daily activities. On August 24, 2011, the ALJ issued his decision denying benefits. The ALJ found that Channell's reduced mental function did not meet or equal a listed impairment on the Social Security Administration's list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. pt. 404, subpt. P, App. 1. The ALJ's conclusion was based on discrediting Channell's 2006 performance IQ score of 59.

This score would normally deem Channell to be disabled and entitled to benefits pursuant to 20 CFR Pt. 404, Subpt. P, App. 1. Section 12.05B (a claimant is disabled when she has a "valid verbal, performance, or full scale IQ of 59 or less"). However, an ALJ may disregard test scores that are inconsistent with a plaintiff's demonstrative activities and abilities as reflected in the record. See Clay v. Barnhart, 417 F.3d 922, 929 (8th Cir. 2005)("the Commissioner need not rely exclusively on IQ scores, and that the Commissioner may disregard test scores that are inconsistent with an applicant's demonstrated activities and abilities as reflected in the record as a whole."). The ALJ found that Channell's daily activities did not indicate she was completely unable to work. The ALJ determined that Channel had no exertional limitations and that she had a residual functional capacity to perform unskilled work. Based on a vocational expert's testimony, the ALJ found that Channell could perform jobs as a poultry hanger, a machine feeder, or a maid / housekeeper.

In seeking reversal, Channell asks to have this case remanded for an award of benefits or, alternatively, for proper consideration of her intellectual disability. Our review of the record reveals that the record is incomplete. It is the ALJ's responsibility "to develop the record fairly and fully, independent of the claimant's burden to press his case." Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004). In his decision denying Channell benefits, the ALJ stated that he scheduled Channell to undergo further testing of her intellectual function on August 11, 2011, to be followed by a Computerized Assessment of Response Bias (CARB), to assess her for malingering or exaggeration. The ALJ was properly attempting to fully develop the record by obtaining a current assessment of Channell's mental functioning. The ALJ states in his decision that Channell failed to attend her scheduled consultive evaluation. He uses Channell's failure to comply as an additional reason to deny Channell benefits. However, aside from the ALJ's statement in his decision, the record does not contain any evidence that Channel was scheduled for further testing.

The issue of further testing is not mentioned in the hearing transcript. There are no letters or other documents in the record which reflect that Channel was informed she was scheduled for further testing. Based on the record, we are left to speculate whether Channell or her counsel were notified of the testing. Given the nature of Channell's claimed disability, a mental impairment of listing-level severity, the record should indicate how and when Channell and her counsel were notified. We should not be required to speculate as to the adequacy of notice of additional testing or whether there was another reason beyond the claimant's control that prevented her attendance at the scheduled testing. Based on the record before us, we cannot conclude that it has been fully developed.

As a result, we reverse and remand this matter for further development of the record on Channell's mental impairments. The ALJ shall reschedule Channell for an IQ test and other testing he deems appropriate before ruling on Channell's claim for benefits. The record shall contain documentation of the notice regarding the testing given to Channell and her counsel.

_____